UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUAN TONY FLORES,<br><br>        Plaintiff,<br><br>    v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>        Defendant. | Case No. 1:20-cv-00701-BAK<br><br>FINAL JUDGMENT AND ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT<br><br>(ECF Nos. 1, 18). |

      This matter is before the Court on Plaintiff's complaint for judicial review of an unfavorable decision by the Commissioner of the Social Security Administration regarding his application for disability insurance benefits. The parties have consented to entry of final judgment by the United States Magistrate Judge under the provisions of 28 U.S.C. § 636(c) with any appeal to the Court of Appeals for the Ninth Circuit. (ECF No. 11).

      Plaintiff presents the following issues for adjudication:

      1. The ALJ failed to properly evaluate the severity and limiting effects of Plaintiff's visual impairments, rendering the RFC unsupported because it fails to consider limitations from all of Plaintiff's medically determinable impairments.

      2. The ALJ failed to include work-related limitations in the RFC consistent with

the nature and intensity of Plaintiff's limitations and failed to offer clear and convincing reasons for discounting Plaintiff's subjective complaints, and failed to develop the record despite acknowledging that the opinion from Dr. Wagner was inadequate.

3. The ALJ erred by improperly discounting the opinion from Mr. Flores, a third-party witness, without proper evaluation as required by the regulations.

(ECF No. 18, p. 1).

Having reviewed the record, administrative transcript, the briefs of the parties,[1] and the applicable law, the Court finds as follows:

**I.    ANALYSIS**

**A.    ALJ's Evaluation of Plaintiff's Vision Impairments**

Plaintiff first argues that the Administrative Law Judge's (ALJ) residual functional capacity (RFC) assessment is unsupported by substantial evidence because the ALJ did not properly evaluate the severity and limiting effects of Plaintiff's visual impairments. (ECF No. 18, p. 8). Specifically, Plaintiff argues that the ALJ mischaracterized the records regarding Plaintiff's visual impairments as normal and ignored the observations of agency employees. (*Id.* at 9-10).

A claimant's RFC is "the most [a claimant] can still do despite [his] limitations." 20 C.F.R. §§ 404.1545(a), 416.945(a); *see also* 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(c) (defining an RFC as the "maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs"). In formulating the RFC, the ALJ weighs medical and other source opinions, as well as the claimant's credibility. *See, e.g., Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226 (9th Cir. 2009); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 603 (9th Cir. 1999) (holding that ALJ was "responsible for resolving conflicts" and "internal inconsistencies" within doctor's reports); *Tommasetti v. Astrue*, 533 F.3d 1035, 1041-1042 (9th Cir. 2008) ("[T]he ALJ is the final arbiter with respect to resolving ambiguities in the medical evidence.").

In reviewing findings of fact with respect to such determinations, this Court determines whether the Commissioner's decision is supported by substantial evidence. 42 U.S.C. § 405(g).

---

[1] Plaintiff filed an opening brief on August 5, 2021, and the Commissioner responded on October 6, 2021. (ECF Nos. 18, 21). Plaintiff did not file a reply.

Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401.

Here, the ALJ determined Plaintiff's RFC as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a). Specifically, the claimant can lift and or carry no more than 10 pounds both occasionally and frequently; he can push and or pull within those weight limits; he can stand and or walk for two hours out of an eight-hour workday, with no prolonged walking greater than 15 minutes at one time; he has no limitations for sitting but he could stand and stretch every two hours for 10-15 minutes if needed, falling within the normal breaks and lunch; he is limited to simple, routine, and repetitive tasks in a work environment with few changes regarding the physical environment as well as tasks to be performed; and he cannot perform jobs that require hypervigilance or watching out for the safety of others.

(A.R. 20)

And regarding the Plaintiff's visual impairments in connection with Plaintiff's functional limitations, the ALJ concluded as follows:

> The claimant has also been diagnosed with the non-severe medically determinable impairments of glaucoma, age related cataracts, and diabetic retinopathy. A non-severe impairment must be a slight abnormality (or a combination of slight abnormalities) that has no more than a minimal effect on the ability to do basic work activities (SSR 16-4p). The medical evidence shows that the claimant's glaucoma, age related cataracts, and diabetic retinopathy are adequately addressed with medication, and or other treatment, and do not cause the claimant more than minimal functional limitations.
>
> The claimant has received little treatment for his glaucoma prior to April 2019, other than eye drops, which have controlled this condition. In an eye examination on January 27, 2017, the claimant reported that he is doing well, and in follow up visits in May, August, and November 2017, he was continued on his medications. The claimant also had normal eye examinations again on January 23, February 5, March 1, May 7, and November 5, 2018, and at most, of these visits, he was again noted as doing well. He was therefore advised to continue his medications and to continue with observation only for this condition [Exhibit 5F/l-2; Exhibit 13F/l, 4-8; Exhibit 14F].
>
> However, during an eye examination on April 9, 2019, the claimant was diagnosed with bilateral, age-related cataracts, moderate non-proliferative diabetic retinopathy, and macular edema, despite the claimant's Al level still being under

> control. The claimant was also diagnosed with continued bilateral glaucoma, controlled with medications, also given a referral to ophthalmology [Exhibit 15F/l-7]. However, there is no indication in the medical evidence of record that the claimant followed up with this referral prior to the hearing on May 29, 2019, and therefore, there is little further medical evidence of record with regard to the claimant's new diagnoses of bilateral, age-related cataracts and moderate non-proliferative diabetic retinopathy and macular edema.
>
> Accordingly, the undersigned finds that the claimant's medically determinable impairments of glaucoma, age related cataracts, and diabetic retinopathy are non-severe and do not cause the claimant more than minimal functional limitations.

(A.R. 18; *see also* 22-23 (characterizing record of visual impairments as non-severe)).

Regarding the ALJ's finding that the Plaintiff's visual impairments are "non-severe", the Court finds that the ALJ's determination was adequately supported by substantial evidence. As the ALJ observed, numerous records indicated that Plaintiff's vision impairments were under control and did not cause Plaintiff more than minimal functional limitations. For example, a January 27, 2017 medical visit that addressed Plaintiff's vision, among other things, states that Plaintiff reported he was "doing well." (*Id.* at 334). In a follow up visit on May 18, 2017, he was reported as improving. (*Id.* at 335). And a July 18, 2017 medical evaluation with Dr. Wagner, a consultative examining physician, noted that Plaintiff had a "history of diabetes with glaucoma, but retained good visual acuity." (*Id.* at 344). Further, the ALJ elsewhere in her decision relied on the medical opinions of state agency medical consultants Dr. Frye and Dr. Bobba, both of whom concluded that Plaintiff did not have severe visual impairments. (*Id.* at 24, 68, 84).   Lastly, there was no record evidence of Plaintiff's bilateral, age-related cataracts, moderate non-proliferative diabetic retinopathy, and macular edema being severe.

While Plaintiff correctly points out that some records also document mild or slowly progressing symptoms, such records do not contradict the ALJ's characterization of Plaintiff's visual impairments as "non-severe." (ECF No. 18, p. 9 (citing A.R. 418, 422, 424)). Similarly, although the ALJ did not specifically address comments from two agency employees—that (1) Plaintiff wore glasses and still "had vision problems as he had to bring up paper close to his eyes" (A.R. 187) and (2) Plaintiff had to hold a smartphone "really close to his face to be able to see" (A.R. 222)—Plaintiff fails to explain how such observations would have ultimately changed the

1    RFC determination, especially in light of all the other record evidence cited by the ALJ. *See Stout*
2    *v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006) (noting that error is harmless
3    when it is "inconsequential to the ALJ's determination that claimant could perform 'light work'")
4    (internal citation omitted). Accordingly, even crediting such observations as true, the Court
5    cannot say that a reasonable ALJ "could have reached a different disability determination." *Id.* at
6    1056.

**B.     ALJ's Discounting of Plaintiff's Subjective Complaints**

Plaintiff next argues that the ALJ "failed to set forth convincing reasons for discounting Plaintiff's alleged symptoms and limitations." (ECF No. 18, p. 10). Specifically, Plaintiff argues that the ALJ improperly rejected Plaintiff's complaints regarding his back pain as unsupported by medical evidence, incorrectly assumed that Plaintiff had not pursued treatment, and inconsistently weighed the opinion of Dr. Wagner. (*Id.* at 11-12). The Ninth Circuit has provided the following guidance regarding a plaintiff's subjective complaints:

> Once the claimant produces medical evidence of an underlying impairment, the Commissioner may not discredit the claimant's testimony as to subjective symptoms merely because they are unsupported by objective evidence. *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991) (en banc); *see also Cotton v. Bowen,* 799 F.2d 1403, 1407 (9th Cir. 1986) ("it is improper as a matter of law to discredit excess pain testimony solely on the ground that it is not fully corroborated by objective medical findings"). Unless there is affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be "clear and convincing." *Swenson v. Sullivan,* 876 F.2d 683, 687 (9th Cir. 1989). General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints.

*Lester v. Chater,* 81 F.3d 821, 834 (9th Cir. 1995), *as amended* (Apr. 9, 1996).

As an initial matter, the ALJ concluded that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (A.R. 21). Because there is no affirmative evidence showing that Plaintiff was malingering, the Court looks to the ALJ's decision for clear and convincing reasons, supported by substantial evidence, for rejecting Plaintiff's testimony. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1160 (9th Cir.

2008) ("The only time [the clear-and-convincing] standard does not apply is when there is affirmative evidence that the claimant is malingering."); *Johnson v. Shalala*, 60 F.3d 1428, 1433 (9th Cir. 1995) (noting that findings regarding a plaintiff's subjective complaints of pain "must be supported by clear and convincing reasons why the [plaintiff's] testimony of excess pain was not credible, and must be supported by substantial evidence in the record as a whole").

Here, the ALJ summarized as follows the reasons for discounting Plaintiff's subjective complaints:

> The claimant is a 44-year old man who alleges disability based on diabetes, glaucoma, feet and lower back problems, a learning problem, and a cyst on buttocks, status post-surgery. The claimant has alleged that there is nothing he can do about his condition since he was born with it, and he still has problems with reading and talking [Exhibit 2E].
>
> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.
>
> As for the claimant's statements about the intensity, persistence, and limiting effects of his or her symptoms, they are inconsistent because the claimant has received minimal treatment for his impairments that has also been routine and conservative in nature, as discussed further below. The claimant has not had any surgeries nor have any surgeries been recommended. In addition, as discussed further below, the claimant has, at times, declined recommended treatment.
>
> In addition, in terms of the claimant's lumbar spine, imaging studies have shown only mild to moderate findings. An x-ray of the claimant's lumbar spine, taken on October 3, 2016, showed multilevel degenerative discopathy and spondyloarthropathy as well as a minimal wedge compression deformity at Tl 2, which suggests old trauma [Exhibit IF/I].
>
> Further, the claimant has received little treatment for his back. In September 2016, the claimant was diagnosed with chronic low back pain, without sciatica, and given a referral to physical therapy. He was also advised to use a heating pad and or warm shower to help relax muscles [Exhibit 3F/l 7-20]. However, there is little medical evidence of record to indicate that the claimant followed up with the referral to physical therapy.
>
> The claimant had another x-ray of his lumbar spine taken on July 18, 2017, with the same findings as the previous x-ray in October 2016 [Exhibit 1 1F/3]. However, again, there is little further medical evidence of record to indicate that

> the claimant followed up with physical therapy or any other treatment for his back until March 28, 2019, when the claimant complained to his primary care physician of worsening low back pain. However, the claimant had a normal physical examination at this time, with negative straight leg raising tests, and a normal gait. The only findings were tenderness to palpation of the claimant's lumbar spine, as well as paraspinal muscle tenderness and limited range of motion with abduction and forward flexion due to pain. The claimant was diagnosed with chronic back pain greater than three months' duration, and given a referral to physical therapy and encouraged as to gentle stretching. In addition, on April 2, 2019, an x-ray of the claimant's lumbar spine indicated no significant changes compared with the x-rays taken on July 18, 2017 [Exhibit I IF/I; Exhibit ISF/8-10].
>
> Nonetheless, the claimant was evaluated by Dr. Garcia-Diaz at Ortho Spine on April 18, 2019. The claimant reported having back pain since 1994, with worsening in the last two years. He also reported that pain medications do not help and so he does not use pain medication. He stated he can take care of his personal needs but cannot engage in strenuous activities, cannot travel anywhere for longer than one-half hour, cannot sit for more than 10 minutes, and cannot sleep more than six hours. However, on examination, the claimant had a normal gait, and normal ranges of motion. He did have some tenderness to palpation of his thoracic and lumbar spine, but straight leg raising tests were negative. Dr. Garcia-Diaz diagnosed the claimant with muscle spasm of the lumbar spine, fracture of thoracic vertebra, and sacral spina bifida without hydrocephalus. He recommended that the claimant continue with self-directed care, including activity modification, ice packs, and limited bed rest and medications as needed. Dr. Garcia-Diaz also noted that the claimant would benefit from physical therapy, lifestyle modifications, and aerobic exercise as tolerated [Exhibit l 7F].
>
> The claimant subsequently began physical therapy on May 6, 2019, at which time he reported that he was born with "a hole in his back"; however, despite sacral surgery in 1994 to repair this condition, he has continued to experience back pain. The claimant was scheduled for two physical therapy visits per week for five weeks; however, at his next visit on May 8, 2019, the claimant reported that he is not feeling better since his first visit, and has been unable to sit, stand, or even lie down on his back after the first visit. He also reported that he does not feel that the home exercises are helpful. There is also little further medical evidence of record to indicate whether the claimant continued to follow up with physical therapy.

(A.R. 21-22).

Regarding Plaintiff's "minimal treatment for his impairments that has also been routine and conservative in nature," the Court finds that the ALJ's determination was adequately supported by substantial evidence. For example, in response to Plaintiff's complaints of "[c]hronic low back pain," Plaintiff was advised to use a "[h]eating pad or warm shower" to relax his muscles. (A.R. 305). Additionally, although Plaintiff complained of pain being a "10/10 on a

0 to 10 pain scale" at times, "ice packs," "bed rest," and "home stretching" were recommended as treatment options.[2] (A.R. 505-06). *See Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008) (noting that history of conservative treatment can undermine subjective reports regarding degree of pain experienced).

While the Plaintiff argues that the ALJ improperly discredited Plaintiff's subjective complaints as not supported by "further medical evidence," a lack of medical evidence is indeed a proper factor to consider. (A.R. 22); *see Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis."). Notably, the ALJ did not solely discount Plaintiff's subjective complaints based on a lack of supporting evidence but also noted that the complaints were inconsistent with the available medical evidence. Similarly, while Plaintiff takes issue with the ALJ noting that Plaintiff had apparently failed to follow-up with further physical therapy after May 8, 2019, noting that the administrative hearing was held a short time after this visit on May 29, 2019, the ALJ's statement must be read in the context of Plaintiff's earlier history in not pursuing treatment. (A.R. 21 -22 ("The claimant had another x-ray of his lumbar spine taken on July 18, 2017, with the same findings as the previous x-ray in October 2016 [Exhibit 1 1F/3]. However, again, there is little further medical evidence of record to indicate that the claimant followed up with physical therapy or any other treatment for his back until March 28, 2019, when the claimant complained to his primary care physician of worsening low back pain.")). In light of the ALJ's entire reasoning, the Court cannot conclude that the ALJ's conclusion as to Plaintiff's lack of pursuing treatment was unsupported by substantial evidence.

Lastly, regarding Dr. Wagner's opinion, Plaintiff's notes that the ALJ gave this opinion only partial weight for failing to "adequately consider the combination of the claimant's bilateral foot disorder and degenerative disc disease of the lumbar spine, or the claimant's subjective

---

[2] The Court notes that "medications as needed" were also recommended. *See Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits.").

complaints" and argues that it was inconsistent for the ALJ to discount Plaintiff subjective complaints about his pain. (ECF No. 18, p. 12 (citing A.R. 24)). However, the fact that the ALJ credited Plaintiff's subjective complaints more "generously" than Dr. Wagner did does not mean that the ALJ erred for failing to completely credit Plaintiff's complaints, especially in light of the many reasons noted above for not doing so. (A.R. 24). Relatedly, Plaintiff's contention that the ALJ had a duty "to further develop the record for a medical assessment" after concluding that Dr. Wagner's opinion was lacking is mistaken. (ECF No. 18, p. 12). "An ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001). Notably, "the mere absence of an opinion from an examining physician does not give rise to a duty to develop the record; rather, that duty is triggered only where there is an inadequacy or ambiguity." *Harrison v. Saul*, No. 1:19-CV-01683-BAM, 2021 WL 1173024, at *5 (E.D. Cal. Mar. 29, 2021). In this case, there was no inadequacy or ambiguity that triggered a duty to develop the record.

In conclusion, the Court finds that the ALJ provided clear and convincing reasons for the weight given to Plaintiff's subjective symptom testimony.

  **C. ALJ's Discounting of Opinion of Mr. Flores, a Third-party Witness**

Lastly, Plaintiff argues that the ALJ erred by discounting the third-party statement of Plaintiff's father, Juan Antonio Flores, regarding Plaintiff's limitations and opining that Plaintiff was unable to work. (ECF No. 18, pp. 12-13; A.R. 212). Specifically, Plaintiff argues that the ALJ improperly rejected the statement because Mr. Flores is not a medical professional and did not provide germane reasons to discount the statement. (*Id.* at 13-14).

"In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work." *Stout*, 454 F.3d at 1053. Such testimony is competent evidence and "*cannot* be disregarded without comment." *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir.1996). If an ALJ disregards the testimony of a lay witness, the ALJ must

provide reasons "that are germane to each witness." *Id.* (internal citation omitted). Further, the reasons must be specific. *Stout*, 454 F.3d at 1054 (explaining that "the ALJ, not the district court, is required to provide specific reasons for rejecting lay testimony"). Additionally, an ALJ may not discredit lay testimony on the basis that the person is not a medical expert. *Bruce v. Astrue*, 557 F.3d 1113, 1116 (9th Cir. 2009) ("A lay person, Bruce's wife, though not a vocational or medical expert, was not disqualified from rendering an opinion as to how her husband's condition affects his ability to perform basic work activities.").

Here, the ALJ concluded as follows regarding Mr. Flores' statement:

> The claimant's father, Juan Flores, completed a Third Party Function Report on April 13, 2017. Mr. Flores indicated he has known the claimant since birth, 41 years, and because he is retired, he spends all day with the claimant. Mr. Flores stated that the claimant is physically and mentally unable to work. He cannot lift heavy objects or bend down, due to his back condition, and must wear special shoes. Mr. Flores also stated that the claimant has special mental needs. However, Mr. Flores also reported that the claimant is able to take care of his personal needs, prepare simple meals, takes his medications, help around the house, drive a car, go out alone, handle a savings account and count change, watch television, go to church twice per month, and go on walks to help his back. Mr. Flores reported that the claimant does not have any problems getting along with others but does not socialize anymore. He also reported that the claimant has difficulty with authority figures and with handling stress. He further stated that the claimant cannot pay attention more than five to ten minutes and has difficulty following instructions [Exhibit 4E]. Mr. Flores has firsthand knowledge of the claimant's activities of daily living because he has known the claimant all his life and spends time with him daily, as they live together. However, Mr. Flores is not a medical professional. As a lay witness, he is not competent to make a diagnosis or argue the severity of the claimant's symptoms in relationship to his ability to work. The opinion of a layperson is far less persuasive on those same issues than are the opinions of medical professionals as relied on herein. In addition, Mr. Flores has reported activities of daily living for the claimant that are not that limited, such as being able to drive a car, take care of his personal needs, prepare simple meals, and take his medications. Ther[e]fore, the undersigned finds that Mr. Flores' statements have minimal persuasive value and gives them minimal weight.

(A.R. 25-26).

To the extent that the ALJ discounted Mr. Flores' statement because he was not a medical professional, the ALJ was incorrect to do so, as a non-expert is not disqualified from rendering an opinion as to how a claimant's condition affects his ability to perform basic work activities. *See*

*Bruce*, 557 F.3d at 1116. However, the ALJ still considered the substance of Mr. Flores' statement and rejected it for a germane reason—that Mr. Flores' own report of Plaintiff's activities, such as being able to drive a car, showed that Plaintiff was not limited to the degree of being disabled. Accordingly, the Court ultimately finds no error in the weight given to Mr. Flores' statement.

## II.   CONCLUSION AND ORDER

Thus, the decision of the Commissioner of Social Security is hereby affirmed. And the Clerk of the Court is directed to close this case.

IT IS SO ORDERED.

Dated:   **February 4, 2022**              /s/ Erica P. Grosjean
                                            UNITED STATES MAGISTRATE JUDGE